IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MYELZAC ALEXTON BARROW,

        Petitioner,

   v.

J. PREMO,

        Respondent.

Case No. 6:11-06383-HU

FINDINGS AND RECOMMENDATION

HAROLD P. DuCLOUX, III
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

   Attorney for Petitioner

ELLEN F. ROSENBLUM
Attorney General
NICK M. KALLSTROM
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

   Attorneys for Respondent

///

///

1 -- FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge

Petitioner, an inmate at Shutter Creek Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the habeas petition should be denied, and this proceeding dismissed with prejudice.

### BACKGROUND

On February 11, 2007, a 14-year-old girl reported to police that petitioner had repeatedly raped and sodomized her at approximately 2:30 a.m. the previous evening. Resp. Exh. 117. The victim reported that after the assault, petitioner forced her to take a bath. Resp. Exhs. 117 at 3 & 124 at 1. The victim was taken to Legacy Emanuel Hospital and examined by Dr. Rami Yazhari. Dr. Yazhari reported that although the victim did not tolerate the examination very well due to generalized soreness, he was able to determine that there were abrasions and bleeding in the vaginal and perineal area consistent with the victim's statement that she had been raped. He reported that the examination did not reveal any blood in the rectum itself. Resp. Exh. 124 at 4-5.

On May 28, 2007, the Forensic Laboratory of the Department of State Police issued an Analytical Report concluding that the seminal fluid extracted from the victim's vagina and anus matched petitioner's DNA (based upon his profile previously entered into the Oregon State Police database). Resp. Exh. 110 at 1-2.

2 -- FINDINGS AND RECOMMENDATION

Five months after the assault, petitioner was arrested. Petitioner initially denied any sexual contact with the victim, but after being told of the DNA evidence he stated that the rape must have happened when he was "blacked out" from drinking. Resp. Exh. 111 at 4-5. On July 19, 2007, petitioner was indicted on two counts each of Rape in the First Degree, Sodomy in the First Degree, Rape in the Third Degree, and Sodomy in the Third Degree. Additionally, petitioner was charged with compelling prostitution. Resp. Exhs. 102 & 120.

On December 11, 2007, the day before trial, petitioner entered a plea of no contest to one count of Rape in the First Degree. Pursuant to a stipulation by the parties, petitioner was sentenced to a downward departure sentence of 100 months, and the remaining charges were dismissed.

Petitioner did not file a direct appeal. Petitioner sought state post-conviction relief on the basis that he received ineffective assistance of counsel. The trial court denied post-conviction relief, the Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. Barrow v. Belleque, 245 Or. App. 300, 260 P.3d 201, rev. denied, 351 Or. 216 (2011).

In the instant proceeding, petitioner alleges that he received ineffective assistance of counsel because trial counsel failed to

3 -- FINDINGS AND RECOMMENDATION

(1) retain the services of a defense physician; (2) demur to the indictment; and (3) obtain exculpatory phone records.

## DISCUSSION

A claim of ineffective assistance of counsel, requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987). The Supreme Court has applied this two-part analysis to ineffective assistance claims arising out of the plea process. See Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012); Hill v. Lockhart, 474 U.S. 52, 59 (1985).

To prove deficiency of performance, petitioner "'must show that counsel's representation fell below an objective standard of reasonableness.'" Taylor, 529 U.S. at 390-91 (quoting Strickland, 466 U.S. at 688). Proof of prejudice, in the context of a guilty plea, requires a showing that, but for counsel's error, petitioner would not have pleaded guilty and would have insisted on going to trial. Premo v. Moore, 131 S.Ct. 733, 743 (2011); Hill, 474 U.S. at 59.

///

///

4 -- FINDINGS AND RECOMMENDATION

I.  **Failure to Obtain Defense Physician**.

Petitioner alleges that trial counsel was ineffective for failing to retain a defense physician to review key medical reports from the physical examination of the victim. In support of this ground for relief, petitioner presented to the post-conviction court the declaration of Dr. William J. Brady, a forensic pathologist, which provides as follows:

> Based upon my review of the [police reports and medical reports authored by Dr. Rami Yazhari] I could have provided expert opinion testimony that [the victim's] claim of anal sodomy is not consistent with the observations of Dr. Yazhari and other medical staff who examined her following the alleged assault. If I had been called as an expert witness at trial, I would have testified that [the victim's] medical examination was not particularly thorough because she was not tolerating the examination well. With that said, I would have testified that her medical examination contained no evidence of anal sex. I would have testified that based upon my review of the medical reports, [the victim] was examined by trained experts on the same day as the alleged assault. Those experts documented absolutely no evidence of bleeding, tearing of other trauma to the anus which would have been expected had she been anally raped as she described to investigating officers.

Resp. Exh. 112 at 2.

Petitioner argued to the post-conviction court that had trial counsel obtained an expert like Dr. Brady, petitioner would have "recognized the possibility of substantially undermining a significant portion of [the victim's] story." Resp. Exh. 107 at 10. Additionally, petitioner argued that had the case gone to

5 -- FINDINGS AND RECOMMENDATION

trial, the jury would have been instructed that if the victim was dishonest in part, they could disregard her entire testimony. Id.

Petitioner's trial counsel submitted an affidavit to the state post-conviction court, explaining her efforts to obtain a defense physician and the ultimate decision not to obtain an expert:

> I reviewed the medical reports with Mr. Barrow, and we discussed obtaining a medical expert. My investigator, Kenn Thomas, attempted to find a gynecological expert to review the medical records and possibly serve as a witness. However, the experts, including Dr. WM Brady, were unwilling to work at guideline rates. After a thorough discussion with Mr. Barrow, we agreed not to pursue this further.

Resp. Exh. 115 at 1; see also Exh. 119 at 2.

The post-conviction court found defense counsel's explanation credible and set forth extensive factual findings to support his rejection of petitioner's ineffective assistance claim:

> 2.   * * * If trial counsel had obtained a defense physician who could have shown that the medical records did not explicitly say that an anal rape occurred, it would have drawn attention to the fact that Dr. Yazhari found that the victim had been vaginally raped. This would have seriously damaged petitioner's defense that the contact was consensual.
>
> 3.   Trial counsel discussed obtaining a medical expert with petitioner, but that there were none available. The experts, including Dr. "WM Brady," were "unwilling to work at guideline rates" to review the medical records regarding the sodomy charges. * * * If Dr. Brady had testified, he would likely have been cross-examined by the State regarding Dr. Yazhari's findings of trauma to the victim's vaginal area, and the State would have successfully rebutted Dr. Brady's testimony with other witnesses and evidence.

6 -- FINDINGS AND RECOMMENDATION

> 4. * * * [T]he medical reports do not conclusively say that the victim was not anally raped, and, moreover, there is no requirement of finding trauma for anal rape to have occurred. Such an act may occur without causing trauma to the victim's rectum. * * *
>
> 5. Petitioner admitted in his deposition that he was guilty of the crime of Sodomy in the Third Degree. * * * In addition, analysis of the evidence from the rape exam "revealed sperm from the vaginal area and sperm from the rectal area." Thus, petitioner's own admissions and the evidence show that anal sodomy occurred, regardless of finding trauma in the victim's rectal area.
>
> 6. Petitioner has not shown that a defense physician's testimony would have been substantial enough to affect his decision to accept the very favorable plea deal.

Resp. Exh. 129 at 3-4.

Petitioner has failed to present clear and convincing evidence to rebut these findings of fact. See 28 U.S.C. § 2254(e)(1). Petitioner similarly has failed to demonstrate that the factual findings are unreasonable in light of the evidence presented. 28 U.S.C. § 2254(d)(1). In light of the presumption of correctness given to these findings of fact, petitioner has failed to demonstrate that trial counsel was constitutionally deficient, or that he suffered prejudice. The post-conviction court's rejection of his ineffective assistance of counsel, therefore, is neither contrary to, nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(1) & (e)(1). Habeas relief is not warranted.

///

7 -- FINDINGS AND RECOMMENDATION

## II. **Failure to Demur to Indictment**.

Petitioner contends trial counsel was ineffective for failing to object to the indictment on the basis that it contained duplicitous counts. Specifically, petitioner complains that he was charged with two counts *each* of Rape in the First Degree, Sodomy in the First Degree, and Rape in the Third Degree, and that the multiple counts for each of these crimes are identical.

At the state post-conviction proceeding, trial counsel explained that she did not demur to the indictment because it was not duplicitous:

> The police reports indicated that during the alleged crimes, Mr. Barrow stopped his actions and then resumed them at several points. For example when Mr. Barrow received a phone call or when he put on a new condom, there was a break in the acts. The alleged victim's statements to the police were sufficient to support all of the indictment's charges.

Resp. Exh. 115 at 1-2.

The prosecutor offered his own affidavit, setting forth his agreement with defense counsel's analysis:

> 1.  Because an indictment is sufficient if each count alleges a criminal offense, it is not duplicative if it has identical charges. If there is evidence in a sexual crime case that the defendant committed a crime more than once, it is typical to list the charges in identical language, particularly if the charged offenses occurred on the same day.
>
> 2.  The indictment in this case was not unnecessarily duplicative because the victim alleged that there was a break in the sexual crimes of rape and sodomy, allowing the grand jury to validly indict Mr. Barrow for committing the crimes twice on the same day.

8 -- FINDINGS AND RECOMMENDATION

Resp. Exh. 116 at 1-2.

In order to prevail on this ground for relief, petitioner must demonstrate that counsel's failure to demur fell below an objective standard of reasonableness and that, had the demur been filed, there is a reasonable probability that it would have been granted. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986); Styers v. Schriro, 547 F.3d 1026, 1029 & n.5 (9th Cir. 2008). The post-conviction court concluded that, under Oregon law, a demur would not have been successful because the indictment charged petitioner with committing the act of rape and sodomy twice on the same day, and the victim's statements to police supported the charges. Resp. Exh. 129 at 5. In so holding, the post-conviction court made the following findings of facts:

> The victim told the police that petitioner raped her, and then stopped the contact when he received a phone call. The victim then tried to leave, but petitioner forced her to get back on the bed and then resumed the rape. The victim continued to struggle, so petitioner threw her off the bed, into a wall, and onto the floor. Again, instead of choosing to cease the sexual assault, petitioner began to sodomize her * * *. The victim was able to kick petitioner away from her, but he pulled her back and continued to sodomize her. Finally, petitioner changed condoms and raped the victim again.

Id.

This court must defer to the state court's interpretation and application of Oregon law except when it appears that its interpretation is an obvious subterfuge to evade the consideration

9 -- FINDINGS AND RECOMMENDATION

of a federal issue. <u>Mendez v. Small</u>, 298 F.3d 1154, 1158 (9th Cir. 2002); <u>Peltier v. Wright</u>, 15 F.3d 860, 862 (9th Cir. 1994); <u>see also Dunn v. Kilmer</u>, 2011 WL 3298064 *3 (D.Or. Aug. 1, 2011). Accordingly, I defer to the PCR court's conclusion that there were no grounds to demur to the indictment under Oregon law.

Further, in light of the victim's statements to police regarding the prolonged and multiple sexual assaults to which she was subjected, there is no basis to conclude that the state post-conviction court made an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1). The state court's legal conclusion that trial counsel was not deficient and that petitioner suffered no prejudice is neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(2).

### III. **Failure to Obtain Exculpatory Phone Records**.

Petitioner alleges that trial counsel rendered ineffective assistance of counsel by failing to obtain exculpatory phone records. On December 11, 2007, immediately prior to the entry of his no-contest plea, petitioner moved for substitution of counsel due to counsel's failure to obtain these records. Petitioner explained to the trial judge his need for substitute counsel as follows:

> Well, I asked her to get my phone records, um . . . ***a couple of weeks ago***, that I believe that would honestly help my case. And she lied to me and said phone records

10 -- FINDINGS AND RECOMMENDATION

> don't have any . . . don't show incoming and outgoing calls. I know for a fact that they do . . . .

Resp. Exh. 104 at 4. During his state post-conviction deposition, however, petitioner conceded that phone records are only kept for six months. Resp. Exh. 123 at 8.

Defense counsel attested that her investigator inquired into obtaining petitioner's phone records, but was told that the phone records would not show the incoming and outgoing calls. Additionally, she attested that she "thoroughly investigated the phone records issue and it was not helpful to Mr. Barrow." Resp. Exh. 115 at 2. The state post-conviction court found trial counsel's attestation credible, and made the following findings of fact:

> 17. The cell phone records were not available to trial counsel and were not helpful. Trial counsel's investigator had inquired into obtaining the records. Upon learning that the records would not show incoming and outgoing calls, trial counsel advised petitioner that the records "would be more damaging than helpful." Trial counsel's advice under the circumstances did not constitute ineffective assistance.
>
> 18. Petitioner has the burden of proving that, not only were the phone records still available when he asked trial counsel to obtain them, but that they also would have shown incoming and outgoing calls and that they would have had an exculpatory effect. The phone records were not available. In his deposition, petitioner revealed that he had learned that the cell phone company "only kept [the records] for six months." The phone calls in question would have been made in the early hours of February 11, 2007. Trial counsel came on as substitute counsel on July 30, 2007. If petitioner did not ask trial counsel almost immediately, the records were already erased. Additionally, petitioner has not

11 -- FINDINGS AND RECOMMENDATION

> demonstrated that the phone records would show his incoming and outgoing calls, let alone established that he was using his own cell phone that morning.
>
> 19. Even if petitioner had proven that counsel failed to prepare for his case by not obtaining the cell phone records, there is no evidence that he would be prejudiced by this omission. Trial counsel determined that the records would be more harmful than helpful. * * * Petitioner has not proven that prejudice resulted from trial counsel's failure to obtain telephone records that would have been more harmful, than helpful, if they were even available.

Resp. Exh. 129 at 8-9.

Petitioner has made no showing that the state post-conviction court's factual findings are unreasonable in light of the evidence presented. 28 U.S.C. § 2254(d)(1). The court's legal conclusion that trial counsel was not deficient and that, in any event, petitioner suffered no prejudice is neither contrary to, nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d)(2). Accordingly, habeas relief is not warranted.

## CONCLUSION

Based on the foregoing, petitioner's petition for writ of habeas corpus (#1) should be DENIED, with prejudice. Petitioner's request for an evidentiary hearing should be DENIED on the basis that it would serve no useful purpose. Finally, a certificate of appealability should be DENIED on the basis that petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2).

///

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due July 15, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due August 1, 2013. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 26th day of June, 2013.

_____
Dennis J. Hubel
United States Magistrate Judge